UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

DEBRA RENEE CHACON,

    Debtor.

Case No. 16-10143 ta7

DEBRA RENEE CHACON,

    Plaintiff,

v.

Adv. No. 16-01027-t

THE GREENBRIAR TOWNHOUSES, INC.,

    Defendant.

## **OPINION**

At issue in this adversary proceeding is whether Plaintiff Debra Renee Chacon's debt to Defendant Greenbriar Townhouses, Inc. was unsecured and therefore discharged by the Court's discharge order. Greenbriar is a housing cooperative; Chacon is a co-op member. After considering the submitted evidence and arguments, the Court concludes that Greenbriar held and holds a valid security interest in Chacon's co-op membership. Greenbriar's claim therefore survived the discharge to the extent of the membership's value.

I.     FACTS[1]

Greenbriar is a New Mexico nonprofit corporation that owns and operates a 160-unit cooperative housing project in Albuquerque, New Mexico. Greenbriar was formed to provide affordable housing to moderate and low-income families. Greenbriar residents buy memberships

---

[1] At the request of the parties, the Court agreed to rule on stipulated facts and exhibits.

in the corporation, which gives them the right to live in a Greenbriar townhouse under the terms of an occupancy agreement.

On December 18, 1996, Chacon and her husband David Brummell bought a membership in Greenbriar for $9,860. Greenbriar deposited the money in its operating account. Chacon and Brummell received membership certificate #644, which states that Chacon and Brummell:

> Is [sic] the owner of a membership of the Greenbriar Townhouses and as such is [sic] entitled to all the rights, privileges, and conditions of such membership as set forth in the Articles of Incorporation and By-Laws, as amended, respectively from time to time. The membership represented by this Certificate is subject to the lien rights of the Corporation as against this membership, as set forth in the By-Laws of the Corporation.

Chacon, Brummell, and Greenbriar signed an occupancy agreement on December 18, 1996. One of the introductory paragraphs grants Chacon and Brummell the right to "have and to hold" a townhouse "on the terms and conditions set forth herein and in the Articles of Incorporation and By Laws of the Corporation and any rules and regulations of the Corporation…."[2] The occupancy agreement is similar to a residential lease. Chacon "lets" and "hires and takes" the Greenbriar townhouse, in exchange for paying monthly housing charges set by the non-profit corporation's board of directors. Initially, the monthly charge was $357; it is now $539. The agreement also has a number of other terms and conditions commonly found in residential leases.

Failure to pay monthly housing charges is a default under the occupancy agreement, entitling Greenbriar to terminate the agreement and take actions that "apply to the eviction of tenants or by force or otherwise, and to repossess the dwelling unit.…" The agreement provides:

> [I]n the event of a breach … by the Member of any of the covenants or provisions hereof, the Corporation shall have the right … to invoke any remedy allowed at law or in equity, as if re-entry, summary proceedings, and other remedies were not herein provided for.

---

[2] Article 14 contains similar language requiring Chacon to "abide by the Articles of Incorporation, By Laws, and rules and regulations of the Corporation …."

> The Member expressly agrees that there exists under this Occupancy Agreement a landlord-tenant relationship and that in the event of a breach … by the Member of any covenant or provision of this Agreement, there shall be available to the Corporation such legal remedy or remedies as are available to a landlord for the breach … under the law by a tenant of any provision of a lease or rental agreement.

A default under the occupancy agreement gives Greenbriar the right to assess late charges and recover reasonable attorney fees and costs.

Paragraph 6 of Greenbriar's By-Laws provides:

> The Corporation shall have a lien on the outstanding regular memberships in order to secure payment of any sums, which shall be due or become due from the holders thereof for any reason whatsoever, including any sums due under the Occupancy Agreement.

Greenbriar gave Chacon and Brummell copies of its Articles of Incorporation, By-Laws, and Rules and Regulations on December 18, 1996.

Chacon and Brummell apparently paid as agreed until 2012, when they divorced. On March 30, 2012, Brummell signed a quitclaim deed, quitclaiming to Chacon his interest in the townhouse. On September 11, 2012, Greenbriar issued a new membership certificate (No. 982) to Chacon only. It contained the same language as the original certificate. Greenbriar has possession of the new certificate.

By December 2013, Chacon had fallen behind on the monthly housing charges. Greenbriar filed a restitution action in state court, and apparently obtained a judgment. In any event, after Chacon caught up on all past-due amounts, the parties submitted a satisfaction of judgment. Within nine months, Chacon again fell behind, and Greenbriar filed a second petition for restitution.

Chacon filed this chapter 7 case on January 27, 2016, staying the second restitution action before judgment could be entered. The Court entered a discharge order in the bankruptcy case on

May 12, 2016. On the same day the Court entered a final decree, discharging the chapter 7 trustee and closing the case. The only remaining matter is this adversary proceeding.

On the petition date, Chacon owed Greenbriar $3,839.05. The current value of her Greenbriar membership is $15,600. Chacon seeks a ruling that, as a general unsecured creditor, Greenbriar's pre-petition claim was discharged. She argues that her relationship with Greenbriar is equivalent to that of a residential tenant and landlord, which would give Greenbriar no right to a lien. Greenbriar counters that its prepetition claim was secured by a first lien on Chacon's Greenbriar membership. Greenbriar asks for a ruling that the claim was not discharged, and also for an award of post-petition attorney fees and interest.

## II. DISCUSSION

### A. Cooperative Housing Corporations.

Cooperative housing corporations are legal hybrids. As one Court explained:

> A co-operative corporation is not a business corporation in the ordinary contemplation. It is a vehicle for the common ownership of property, to enable the occupants, the stockholders of the cooperative, to own, manage, and operate residential apartments without anyone profiting therefrom. The cooperative plan is *sui generis:* there are elements of ownership, as well as stock and leasehold rights. The primary interest of every stockholder in such a corporation is the long term proprietary lease and the stock is incidental to such purpose and affords merely the practical means of combining an ownership interest with the method of sharing proportionately the assessments for maintenance and taxes. While it is true that the occupants pay monthly maintenance charges in much the same manner as tenants pay rent, they have a substantial capital investment and a direct interest in the financial stability, character, reputation, and personal conduct of the other stockholders-occupants of the premises....

*First Sav. Bank of Virginia v. Barclays Bank, S.A.,* 618 A. 2d 134, 136 (D.C. App. 1992) (quoting 15A Am. Jur. 2d *Condominiums and Co-operative Apartments* § 62, at 894 (1976)).

Chacon focuses on the landlord-tenant aspect of her relationship with Greenbriar to argue that Greenbriar has no lien rights. Chacon correctly argues that under New Mexico's Uniform Owner-Resident Relations Act, N.M.S.A. § 47-8-1 et seq., which governs the landlord-tenant

-4-

aspect of their relationship, Greenbriar is not entitled to a landlord's lien. *See* N.M.S.A. § 47-8-36.1. The landlord-tenant relationship, however, is only one aspect of cooperative housing. The other component is the tenant's membership in the nonprofit corporation. Greenbriar argues that the relevant documents grant it a lien or security interest in Chacon's membership.

      B.      <u>The Nature of Chacon's Greenbriar Membership</u>.

A number of courts and secondary sources have held that interests like Chacon's Greenbriar membership are personal property, rather than real property. *See, e.g., State Tax Comm'n v. Shor*, 371 N.E.2d 523 (N.Y. 1977) (often cited for the proposition that shares of stock issued in connection with cooperative apartments are personal property, not real property); *Superior Fin. Corp. v. Haskell*, 556 F. Supp. 199 (S.D.N.Y. 1983) (cooperative shares are personalty for the purpose of the Uniform Commercial Code); William M. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 2991.05 (rev. 1997) ("Generally, a cooperative apartment corporation owns the land and apartment building and its individual shareholders have the right to proprietary leases covering particular apartments, which are considered to be personal property rather than realty"); Patrick E. Kehoe, *Cooperatives and Condominiums* 14 (1974) ("[O]wnership of a cooperative does not include individual fee simple title to a unit…. A buyer … acquires … the ownership of the shares of the cooperative's stock"). In some states, this rule has been codified by the legislature. *See, e.g.,* Md. Code, Corporations and Associations, § 5-6B-16 (a member's ownership interest in cooperative housing is personal property).

Cooperative housing entities are not common in New Mexico; only one local case appears to address lien rights in the context of a cooperative. In *Valley Federal Sav. Bank v. Stahl,* 793 P.2d 851 (N.M. 1990), a bank sought to enforce its lien rights in the defendant-member's interest in a cooperative marketing association of dairy farmers. The New Mexico Supreme Court held

-5-

that the member's right to payment of capital retains was a general intangible akin to a stock interest in a corporation, and the attachment, perfection, and priority of the bank's security interest was governed by Article 9 of the UCC. 793 P.2d 854.

Based on *Valley Federal* and the other law cited above, the Court rules that Chacon's membership in Greenbriar is personal property.

C. Greenbriar's Claim of a UCC Security Interest in Chacon's Membership.

Greenbriar argues that it has an attached and perfected security interest in the membership.

1. Attachment. To grant a security interest, the relevant documents "must show, to an objective observer, that [the] debtor intended to transfer an interest in personal property as security to a creditor." 4 White, Summers, & Hillman, *Uniform Commercial Code* § 31:4 (6th ed. 2015) (collecting cases). *See generally* N.M.S.A. §§ 55-1-201(37) (definition of security interest) and 55-9-102(73) (definition of security agreement). Beyond demonstrating the parties' intentions, the agreement must also contain an adequate description of the collateral. *Avlin Inc. v. Manis,* 953 P.2d 309, 310-311 (N.M. App. 1997); *In re Finch,* 905 P.2d 198, 201 (N.M. 1995).

The occupancy agreement, Articles, By-Laws, and Certificate should be read together. *See, e.g., Levenson v. Haynes,* 934 P.2d 300, 305 (N.M. App. 1997) (documents executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction are one instrument and should be read and construed together); *Board of Educ., Gadsden Indepent School Dist. No. 16 v. James Hamilton Const. Co.* 891 P.2d 556 (N.M. App. 1994) (when two contract documents refer to each other, they are properly construed together). *See also In re McCoy,* 496 B.R. 678, 684 (Bankr. E.D.N.Y. 2011) (relationship of the parties in a co-operative corporation is governed by lease, bylaws, and certificate of incorporation, all of which must be read together);

*Dan Fe Bland v. Two Trees Mgmt. Co.,* 66 N.Y.2d 556, 563 (N.Y. App. 1985) (same); *In re State Tax Comm. v. Shor,* 43 N.Y.2d 151 (N.Y. App. 1977) (same).

Here, the By-Laws expressly create a lien on Chacon's membership, to secure payment of all amounts due under the Occupancy Agreement. The occupancy agreement requires Chacon to comply with the By-Laws. The membership certificate states that Chacon's membership is subject to the lien provision in the By-Laws. Together, the documents make clear that Chacon intended to grant a security interest in her membership to secure payment of amounts due under the Occupancy Agreement. Greenbriar's security interest therefore attached.

2. Greenbriar's Security Interest "Rode Through" the Bankruptcy Case. Valid liens and security interests that are not avoided by the debtor or the trustee "ride through" the bankruptcy case and can be enforced *in rem* after the case is closed. As stated in *Chandler Bank of Lyons v. Ray,* 804 F.2d 577 (10th Cir. 1986):

> [F]or sections in the Code which relate to automatic stays and to lien avoidance to have any substance at all necessarily leads to the conclusion that unavoided liens pass through § 506(d) without action by the lien holder. Thus the injunction on discharge under § 524 of the Code does not preclude *in rem* actions by secured creditors.

804 F.2d at 579. *See also Cortez v. American Wheel, Inc. (In re Cortez),* 191 B.R. 174, 177 (9th Cir. BAP 1995), citing *Dewsnup v. Timm*, 502 U.S. 410, 418 (1992) ("it is well settled that valid, perfected liens and other secured interests pass through bankruptcy unaffected.").

The lien rides through whether or not the creditor files a proof of claim. *In re Eakin*, 153 B.R. 59 (Bankr. D. Id. 1993) (valid, perfected liens survive a discharge regardless of whether a proof of claim is filed); *In re Conley,* 2001 WL 35814443 (Bankr. D. Id.); *In re Harpole*, 260 B.R. 165, 173 (Bankr. D. Mont. 2001) (lien holder lien did not have to file a proof of claim in a chapter 13 case; lien survived bankruptcy because it was not avoided).

The "ride through" applies to unperfected as well as perfected liens and interests. *In re Eakin*, 153 B.R. 59 (Bankr. D. Id. 1993) ("a valid security interest passes through a bankruptcy filing unaffected even if the lien could have been avoided so long as the lien was not in fact avoided"); *In re Cortez*, 191 B.R. at 178 (unrecorded mortgage survived the bankruptcy because it was not avoided); *In re Corbett*, 2015 WL 1045667, at *5 (Bankr. E.D. Cal.); *In re Glow*, 111 B.R. 209 (Bankr. N.D. Ind. 1990). *See also In re Flynn*, 238 B.R. 742, 745 (Bankr. N.D. Ohio 1999) (lien perfection is only relevant to avoidability, not whether the creditor holds a valid lien).

        3.    <u>The Court Need Not Reach the Issue of Perfection</u>.  Greenbriar attempted to perfect its security interest in Chacon's membership by taking possession of the certificate. N.M.S.A. § 55-9-313(e) provides:

> A security interest in a certificated security in registered form is perfected by delivery when delivery of the certificated security occurs under Section 55-8-301 NMSA 1978 and remains perfected by delivery until the debtor obtains possession of the security certificate.

If the membership is a security, then it likely would come within the definitions of "certificated" and "in registered form." *See* N.M.S.A. § 55-8-102(a)(4) and (13). Further, the certificate likely was delivered in accordance with N.M.S.A. § 55-8-301(a)(1) (delivery occurs when a buyer acquires possession).

It is not clear, however, that the membership is a security. In *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837 (1975), the Supreme Court ruled that shares of stock in a nonprofit housing cooperative were not "securities" within the meaning of the Securities Act of 1933 and Securities Exchange Act of 1934. The basis for the ruling was that the shares were not purchased for investment, but in order to obtain affordable housing. Here, Greenbriar did not issue shares of stock (which are prohibited by N.M.S.A. § 53-8-28), but memberships. *See* N.M.S.A. § 53-8-11.

Thus, *Forman's* reasoning that housing cooperatives are not investments is bolstered by the fact that Chacon's interest in Greenbriar may not be an equity interest like common or preferred stock.

N.M.S.A. § 55-8-103 sets forth "rules for determining whether certain … interests are securities." It states "[a] share or similar equity interest issued by a corporation, business trust, joint stock company or similar entity is a security." N.M.S.A. § 55-8-103(a). Chacon's membership in Greenbriar may not come within this definition, as it may not be an equity interest. *Cf. Citizens Bank & Trust v. Piggly Wiggly Alabama Distributing Company, Inc.*, 2017 WL 242534 (Ala. App. 2017) (certificated stock in grocery cooperative entity constituted a security).

If Chacon's membership is not a security, perfection likely would require the filing of a financing statement. *See* N.M.S.A. § 55-9-310. There is no evidence that Greenbriar filed a financing statement.

The Court need not decide whether Greenbriar's security interest is perfected. Perfected or not, the security interest attached and was not avoided during the bankruptcy case. The security interest "rode through" the case and remains a valid, *in rem* interest.

D. <u>Remedies</u>.

Although Greenbriar's pre-petition claim was not discharged, it cannot be collected as a personal liability of Chacon. *In re Paul*, 534 F.3d 1303, 1309 n. 6 (10th Cir. 2008); 11 U.S.C. § 524. Further, Greenbriar's setoff argument fails because it owes nothing to Chacon that could be offset against Chacon's obligation to Greenbriar. "The right of setoff 'allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A.'" *In re Myers,* 362 F.3d 667, 672 (10th Cir. 2004). Greenbriar is limited to enforcing its security interest in Chacon's membership, in accordance with the default and enforcement provisions of Article 9. *See* N.M.S.A. § 55-9-601 et seq.

E. <u>Additional Attorney Fees, Costs, and Interest</u>.

The Court declines to award Greenbriar additional attorney fees, costs, interest, or post-petition monthly housing payments. In her complaint, Chacon sought a declaratory judgment that her pre-petition debt to Greenbriar was discharged. Greenbriar timely answered the complaint, limiting its requested relief to a ruling against Chacon and "such other and further relief as the Court deems property under the circumstances." Greenbriar first requested additional fees, costs, and interest in it brief in chief. The Court cannot find that Chacon was sufficiently on notice of Greenbriar's request for a money judgment, nor that the request was properly plead. In any event, it appears Greenbriar will have to return to state court to foreclose its security interest, at which time the state court can determine the amount of the debt.

III. <u>CONCLUSION</u>

Greenbriar had and has a valid (albeit not necessarily perfected) security interest in Chacon's co-op membership, securing payment of any prepetition amounts due under the occupancy agreement. Such amounts were not discharged. The Court will enter a separate declaratory judgment to that effect, and deny all other requested relief.

_[signature]_

David T. Thuma
United States Bankruptcy Judge

Entered: August 8, 2017

Copies to: Counsel of record